EQUITABLE MARINE INSURANCE COMPANY *vs.* MARSHALL L. ADAMS.

Barnstable.    March 29, 1899. — May 19, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Promissory Note — Consideration — Notice of Dishonor — Statute of Limitations — Evidence — Defence.*

If an insurance company assents to the transfer of a policy on condition that the assignee indorses the premium note, there is sufficient consideration for the indorsement.

The Pub. Sts. c. 77, § 15, as to notice of dishonor to indorsers, do not apply to an indorsement by a stranger to the note upon a new consideration after delivery.

The running of the statute of limitations upon a premium note payable two months after risk ends is not accelerated by the fact that the insurance company might have cancelled the policy before the risk ended.

A party to negotiable paper is not entitled to prove that he understood that he signed " only in his fiduciary capacity as assignee " in insolvency.

A blank indorsement of a premium note by an assignee of the policy authorizes

the holder to write in "the undersigned, in consideration of the assent to the assignment of the policy, becomes bound by the within contract for the payment of the premiums thereon."

CONTRACT, against the indorser of a promissory note given by S. S. Swift to the plaintiff. Trial in the Superior Court, before *Sherman*, J., who directed the jury to return a verdict for the plaintiff; and, at the defendant's request, and with the plaintiff's consent, reported the case for the determination of this court. If any of the rulings were wrong, a new trial was to be ordered; otherwise, judgment was to be entered on the verdict. The facts appear in the opinion.

*W. A. Morse,* for the defendant.

*R. A. Hopkins & C. H. Stebbins,* for the plaintiff.

HOLMES, J. This is an action of contract upon an indorsement of a premium note given to the plaintiff company. The case was sent to an auditor, who found for the plaintiff, but gave no grounds and set forth no evidence. Therefore we must assume the finding to mean that the defendant indorsed the note pending the policy in consideration of the company's assenting to a transfer of it, as is alleged in the declaration. At that time the defendant was assignee in insolvency of one S. S. Swift, to whom the policy originally was issued. In the Superior Court the case was heard on the auditor's report. The defendant offered to show, in addition, that he understood that he signed "only in his fiduciary capacity as assignee." This was rejected. Rulings also were asked and refused that the defendant was not liable without notice of dishonor, and that the statute of limitations had run in his favor. The court directed a verdict for the plaintiff, and the case is here on report.

The ruling of the court was right. The consideration was sufficient if the defendant's promise was offered in consideration of the company's assenting to the transfer and the company thereupon did the stipulated act, or if, as seems more probable from the papers, the company assented upon condition that the defendant would indorse the note, and thereupon the defendant indorsed it. *First National Bank* v. *Watkins,* 154 Mass. 385, 387, 388.

It does not appear that the defendant did not receive notice of dishonor. But Pub. Sts. c. 77, § 15, do not refer to a col-

lateral contract made subsequent to the issuing of a note and upon an independent consideration, even if it happens to be indorsed upon the note, instead of being written on a separate piece of paper.

The note was payable " two months after risk ends." The risk ended on June 17, 1890, and the writ was dated April 22, 1896. Therefore the statute of limitations had not run. The defendant refers to a provision in the policy authorizing the plaintiff to cancel it in case of insolvency, such as happened.* But the plaintiff instead of electing to cancel it chose to assent to its transfer, as we have said.

The defendant's evidence was inadmissible. His private understanding or intent was immaterial. What he promised was determined by the normal meaning and implications of his writing, not by his intent. *Violette* v. *Rice, ante,* 82. See *Hall* v. *First National Bank of Chelsea, ante,* 16. It is unnecessary to go further. We do not mean to imply that in our opinion a man could contract otherwise than as a natural person, but we express no opinion upon that subject.

The plaintiff wrote over the defendant's signature the following words: " The undersigned in consideration of the assent to the assignment of the policy becomes bound by the within contract for the payment of the premiums thereon." Whether the plaintiff was entitled to insert words of guaranty or not, there is no doubt that the defendant at least undertook as much as was written over his name. *Scott* v. *Calkin,* 139 Mass. 529.

*Judgment on the verdict.*

---

* This provision was as follows: " It is also agreed that whenever the premium has not been paid, or a note has been taken for the same, the said insurers shall have the right to cancel the policy, if the person liable to pay the said premium, or the maker or indorser of such note, shall become a bankrupt, or shall be insolvent, on the arrival of the vessel at the first port of destination, fifteen days' notice of intent to cancel having been given the insured."